# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| OTIS NICHOLSON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 09 CV 1263 |
| | ) |
| v. | ) Hon. Charles R. Norgle |
| | ) |
| SYNCH SOLUTIONS, AMS DEAN, HNTB, and ISTHA | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Pro se Plaintiff Otis Nicholson ("Nicholson") has long been engaged in efforts to fashion a complaint for employment discrimination. In his Fifth Amended Complaint, Nicholson sues Synch-Solutions, AMS/Dean, HNTB Corporation ("HNTB"), and the Illinois Tollway Authority ("ISTHA") (collectively, "Defendants") for termination of his contract, retaliation, failure to hire, and disparate treatment pursuant to 42 U.S.C. § 1981, and for breach of contract under Illinois state law. Before the Court is Defendant HNTB's motion to dismiss Nicholson's Fifth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons the motion is granted, and this case is dismissed.

## I. BACKGROUND

The Court takes the following facts from Nicholson's Fifth Amended Complaint and exhibits attached thereto. Nicholson, an African American man, was hired as an independent contractor by Synch-Solutions and AMS/Dean (a third-party recruiting vendor). Nicholson signed an at-will employment agreement with Synch-Solutions on June 4, 2007. The position,

Project Manager, was contract to hire after six months, contingent upon satisfactory work performance as a contractor for Synch-Solutions. Nicholson's role was to provide support and technical consultation to Sych-Solutions's client HNTB and, HNTB's client, ISTHA.

On June 11, Nicholson reported to Synch-Solution's office and met with hiring managers Carl Davis ("Davis") and Anthony Samuta ("Samuta"). Nicholson's site location was at the Illinois Tollway ("Tollway"). Nicholson was given office space by ISTHA Office Administration on June 21. Five days later, however, he was moved from that cube location to a temporary one in order to accommodate an HNTB consultant, John Tuttle, "who wanted the desk." Fifth. Am. Compl. ¶ 22. On June 26, Nicholson sent an email to Bob Applequist ("Applequist") at AMS/Dean to indicate his discomfort with his situation at ISTHA. Nicholson complained that he was having difficulty working without proper accommodations. Nicholson stated that it appeared that others were getting seat assignments and access to email, internet, or phone first. Race was never mentioned.

Several months later, on August 15, Sharif Abou-Sabn ("Abou-Sabn") (an individual affiliated with HNTB) stated that Nicholson was "Big bald black walking around acting tough and bad." Fifth Am. Compl. ¶ 23. On August 16, Nicholson reported the comment to Samuta. Nicholson also sent Samuta an email, which addressed his perceived mistreatment at ISTHA. In this email, Nicholson stated that he had an "unpleasant meeting with HNTB Sharif today as he stated that the Tollway was not happy with my work." Fifth Am. Compl. Ex. VI. Nicholson addressed ISTHA's stated issues with his work performance, including: (1) his failure to provide "accurate timely information" and; (2) his "utilization on the internet." Id. Nicholson characterized the "negative feedback" as a "by product of both the Tollways' inability to work

2

together internally and how the newly proposed Fiber Optic contracts does not meet the Tollway's expectations." Id. Nicholson further stated, "I feel I am being blamed for Matt Devery and Ed Wimes bad decisions." Id. In response, Samuta asked Nicholson to meet with him the next day, August 17, at the Tollway.

On August 20, Nicholson met Samuta and Davis at Synch-Solutions's office. According to Nicholson, the purpose of the meeting was to discuss finding a new position at AT&T. On August 29, Nicholson sent an email to Applequist and John Johanneson at AMS/Dean that states, among other things, that "[o]n 8/20/07 I had a meeting with Tony in the downtown office, he stated I would receive 2 more weeks of pay without being on site at ISTHA before I would be assigned to the AT&T position that he was working on." Fifth Am. Compl. Ex. XII.

On August 30, at 12:06 AM, Nicholson sent Samuta and Abou-Sabn the following email:

Gentlemen,

After speaking with my legal advisor I thought it best to inquire about the final reason why HNTB decided not to retain my services on the Illinois State Tollway and Highway Authority engagement.

As a professional I did what I was assigned to do and provided the demand upon deliverables on schedule.

However after hearing the news of my dismissal from this assignment without a clear understanding of why it was done has left me knowing that as a Black African American male I was dismissed not because of skill set and meeting deliverables, but because of race.

On 8/15/07, I was informed by Mr. Sherif Abou-Sabn that ISTHA personnel did not like me or the way that I carry myself, and regardless of who they were they were his customers. I personally went out my [sic] way of being a professional consultant to the ISTHA and HNTB people and built solid professional relationships. To hear this from Sharif is alarming. That example alone is racial discrimination.

Id. Ex. VII.

The same day, August 30, AMS/Dean informed Nicholson that it was going a different direction, and gave him notice of its termination of their contract. In this notification, AMS/Dean stated that its client Synch-Solutions had previously notified Nicholson that he was removed from the HNTB/ITSHA project and that his last day as a contractor for Synch-Solutions would be August 31, unless it was able to place him on another project. AMS/Dean informed Nicholson that Synch-Solutions was unsuccessful at placing him on another project and therefore his contract with Synch-Solutions had been terminated. Additionally, AMS/Dean notified Nicholson that the opportunity for a permanent position was therefore "off the table." Id. Ex. IX.

In his Fifth Amended Complaint, Nicholson alleges that Synch-Solutions, AMS/Dean, HNTB, and ISTHA are liable for employment discrimination under § 1981 and for breach of contract under Illinois State law. HNTB's motion to dismiss is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, a plaintiff's complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (internal quotation marks and citation omitted). The Court construes Nicholson's pro se pleadings liberally, see Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008), accepts as true all well-pleaded facts in the Fifth Amended Complaint, and draws all reasonable inferences in his

4

favor, Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., 657 F.3d 496, 502 (7th Cir. 2011). A plaintiff, however, may plead himself out of court by "pleading facts that establish an impenetrable defense to its claims." Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008) (citing Massey v. Merrill Lynch & Co., 464 F.3d 642, 650 (7th Cir. 2006)); see also Atkins v. City of Chi., 631 F.3d 823, 832 (7th Cir. 2011) ("[A plaintiff] can plead himself out of court by pleading facts that show he has no legal claim." (citations omitted)). Pleadings consist of "the complaint, any exhibits attached thereto, and the supporting briefs." Cole v. Milwaukee Area Technical Coll. Dist., 634 F.3d 901, 903 (7th Cir. 2011) (citing Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002)). "Dismissal is proper if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010) (quoting Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 694 (7th Cir. 1999)).

**B.     § 1981 Claims**

To state a claim under § 1981, a plaintiff must allege discrimination based on race. Jennings v. Sallie Mae, Inc., 358 F. App'x 719, 721 (7th Cir. 2009) (citing Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir. 1996)). Nicholson alleges four counts under § 1981 against Synch-Solutions, AMS/Dean, IINTB, and ISTHA for: (1) termination of his contract; (2) retaliation; (3) failure to hire; and (4) disparate treatment. Each count is discussed below.

*1.     Termination of Contract*

Nicholson alleges that his contract was terminated based upon race discrimination because Abou-Sabn (an individual affiliated with IINTB) stated that he was "Big bald black walking around acting tough and bad." Fifth Am. Compl. ¶ 23. On August 16, Nicholson

reported the comment to Samuta, Vice President of Client Services at Synch-Solutions. "[A]s a general principle, derogatory comments are relevant only when attributable to the person who made the adverse employment decision." Schreiner v. Caterpillar, Inc., 250 F.3d 1096, 1099 (7th Cir. 2001) (citations omitted). Here, Nicholson does not allege that Abou-Sabn was a decision-maker regarding Nicholson's contract with Synch-Solutions or AMS/Dean.

Further, as HNTB correctly points out, Nicholson fails to allege that he has any contractual relationship with HNTB. Nonetheless, Nicholson attempts to attach liability to Synch-Solutions, AMS/Dean, HNTB, and ISTHA based upon this unfortunate, stray remark by alleging that Defendants acted in concert to terminate him. This speculative and conclusory allegation of a conspiracy must be rejected. Winterland Concessions Co. v. Trela, 735 F.2d 257, 262 (7th Cir. 1984); see also McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011) ("[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth (citing Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)).

Nicholson's pleadings suggest that Abou-Sabn brought ISTHA's issues with Nicholson's work performance to Synch-Solutions's attention. Nicholson does not allege, for example, that Abou-Sabn recommended that Nicholson be terminated. See Smith v. Bray, No. 11-1935, 2012 WL 1871855, at *5 (7th Cir. May 24, 2012) ("[A] final decisionmaker's reliance on an improperly motivated recommendation from a subordinate may render the corporate employer liable because the subordinate acts as the firm's agent."). Nor does Nicholson allege any facts from which the Court could infer that Abou-Sabn's remark had any bearing on Synch-Solutions's or AMS/Dean's decision to terminate his contract. Abou-Sabn's alleged statement is insufficient to support Nicholson's claim under § 1981. See Mehta v. Des Plaines Dev. Ltd., 122 F. App'x

276, 279 (7th Cir. 2005) (holding that the plaintiff was unable to succeed in his § 1981 based on three racially derogatory statements made by a non-decision-maker).

Additionally, the Court notes that Exhibit VI, identified as "8/16/2007 Complaint of HNTB harassment and racially derogatory comment," makes no mention of the alleged racially derogatory remark. Rather, this document, an email Nicholson sent to Samuta, addresses Nicholson's perceived mistreatment at ISTHA. Nicholson stated that he had an "unpleasant meeting with HNTB Sharif today as he stated that the Tollway was not happy with my work." Fifth Am. Compl. Ex. VI. Nicholson addressed ISTHA's stated issues with his work performance, including: (1) his failure to provide "accurate timely information" and; (2) his "utilization on the internet." Id. Nicholson characterized the "negative feedback" as a "by product of both the Tollways' inability to work together internally and how the newly proposed Fiber Optic contracts does not meet the Tollway's expectations." Id. Nicholson further stated, "I feel I am being blamed for Matt Devery and Ed Wimes bad decisions." Id. This email contradicts Nicholson's § 1981 claims. Because there is no suggestion that Nicholson's race played any role in Synch-Solutions and AMS/Dean's decision to terminate him, Count I is dismissed.

### 2. *Retaliation*

"The Supreme Court has held that § 1981 authorizes claims for retaliation, if one person takes action against another for asserting the right to substantive contractual equality provided by § 1981." Smith v. Bray, No. 11-1935, 2012 WL 1871855, at *5 (7th Cir. May 24, 2012) (citing CBOCS West, Inc. v. Humphries, 553 U.S. 442, 445 (2008)). "[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing

7

impermissible discrimination." Id. (internal quotation marks and citation omitted).

Nicholson alleges that Synch-Solutions, AMS/Dean, HNTB, and ISTHA retaliated against him by terminating his contract for complaining of race discrimination. Nicholson's pleadings, however, contradict this allegation. Nicholson was removed from his position with HNTB and ISTHA prior to his August 30 email to Samuta and Abou-Sabn declaring that he had been subjected to race discrimination. Fifth Am. Compl. Ex. XII ("On 8/20/07 I had a meeting with Tony in the downtown office, he stated I would receive 2 more weeks of pay without being on site at ISTHA before I would be assigned to the AT&T positions that he was working on."); id. Ex. IX ("Our client Synch-Solutions had notified you on 8/2[0] you were removed from their client and that your last days as contractor for them would be 8/31/07 . . . ."). Synch-Solutions contacted AMS/Dean on August 30, to give its official notice that Nicholson's services were no longer required. Id. Ex. VIII. Synch-Solutions indicated the specific details outlining the issues that HNTB and or ISTHA had with Nicholson's performance. Id. Additionally, Synch-Solutions stated, "Otis [Nicholson] sent an email directly to our client; please notify Otis [Nicholson] that this is not acceptable." Id.

Synch-Solutions's August 20 decision to terminate Nicholson's contract was formalized on August 30 by AMS/Dean. AMS/Dean sent Nicholson an email, which (1) terminated Nicholson's contract; (2) notified him that Synch-Solutions had also terminated his contract because it had been unable to place him on another project; and (3) notified him that the opportunity for a permanent position was "off the table." Id. Ex. IX. Even drawing all reasonable inferences in Nicholson's favor, there is not enough here to raise Nicholson's right to relief for retaliation above a speculative level. Simply put, Nicholson's Fifth Amended

8

Complaint does not have "enough substance to warrant putting the defendant[s] to the expense of discovery." Atkins, 631 F.3d 823. Accordingly, Count II is dismissed.

### 3. *Failure to Hire*

Nicholson alleges that because Synch-Solutions "reneged on the promise to find Plaintiff another position," Fifth Am. Compl. ¶ 55, Defendants are liable for failure to hire under § 1981. Nicholson is apparently claiming that had Synch-Solutions placed him on another project, his work performance as a contractor for Synch-Solutions would have been "satisfactory" for the six month contract to hire period. See Fifth Am. Compl. Ex. I, XIII. This amounts to pure conjecture and speculation.

Nonetheless, HNTB argues that this claim is time-barred. "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." Indep. Trust Corp., 665 F.3d at 935. Nicholson alleges that Defendants failed to hire him in August of 2007, or construed liberally, December 10, 2007 (the date of Synch-Solution's offer of employment). With leave of the Court, Nicholson filed his Fifth Amended Complaint, which among other things, added new parties AMS/Dean, HNTB, and ISTHA, on November 4, 2011. But because Nicholson's Third Amended Complaint was dismissed without prejudice with respect to his § 1981 claims on May 10, 2011, the relevant date for statute of limitation purposes is June 17, 2011, the date Nicholson filed his Fourth Amended Complaint. See Lee v. Cook Cnty., 635 F.3d 969, 971 (7th Cir. 2011) ("When a federal civil action is dismissed without prejudice, the statute of limitations runs continuously."); see also Elmore v. Henderson, 227 F.3d

9

1009, 1011 (7th Cir. 2000) ("[A] suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed." (citations omitted)).

A failure to hire claim under § 1981 is subject to a two-year statute of limitations. Fit v. Northern Trust, Corp., No. 07 C 2352, 2007 WL 4373971, at *1-2 (N.D. Ill. Dec. 14, 2007) (holding that a failure to hire claim would have been actionable under the pre-1991 version of § 1981, thus it is subject to the two-year statute of limitations for personal injury actions under Illinois state law, not the four-year statute of limitations under 28 U.S.C. § 1658). Nicholson's claim for failure to hire is therefore time-barred. Accordingly, Count III is dismissed.

### 4. *Disparate Treatment*

Finally, Nicholson alleges that ISTHA and HNTB failed to provide him with proper accommodations. The ISTHA Office Administration gave Nicholson office space on June 21, 2007. But five days later, he was moved from that cube location to a temporary one in order to accommodate an HNTB consultant, John Tuttle, "who wanted the desk." Fifth. Am. Compl. ¶ 22. Nicholson perceives this as race discrimination. Nicholson asserts that other non-African Americans were treated more favorably than him by being provided office space and adequate computer services. But this mere assertion, without more, does not plausibly suggest that this action was motivated by discriminatory animus. Indeed, contrary to Nicholson's assertion of race discrimination, an email Nicholson attaches to his Fifth Amended Complaint states, "According to some of the Admin staff a new directive has came [sic] out regarding Consultants accessing [internet and Outlook]. . . . The directive states that limited internet access will be provided in order to send and receive emails via the Consultants Outlook." Fifth Am. Compl. Ex. XV. Count IV is therefore dismissed.

## C. Breach of Contract

Because the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Nicholson's state law claim. See 28 U.S.C. § 1367(c)(3). Accordingly, Nicholson's state law claim for breach of contract is dismissed without prejudice.

## III. CONCLUSION

For the foregoing reasons, IINTB's motion to dismiss Nicholson's Fifth Amended Complaint with prejudice is granted. Because Nicholson cannot prove any facts that would support his claim for relief for employment discrimination under § 1981, the Court also dismisses Nicholson's claims against Synch-Solutions, AMS/Dean, and ISTHA with prejudice. The Court declines to exercise supplemental jurisdiction over Nicholson's remaining state law claim, and therefore the state law claim is dismissed without prejudice. Accordingly, this case is terminated.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: May 31, 2012

11